UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES KELLY,

        Plaintiff,

v.

REED HOLTGEERTS, et.al.,

        Defendants.

Case No. C08-261-MJP-BAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff James Kelly ("plaintiff" or "Kelly"), proceeds *pro se* and *in forma pauperis*, in this 42 U.S.C. § 1983 action against employees of the King County Correctional Facility[1] ("KCCF") in Seattle, Washington. Dkt. 6, 22. Plaintiff alleges in his Amended Complaint that defendants violated his Eighth Amendment rights by denying him medical care. Dkt. 11. Plaintiff names the following KCCF defendants: (1) KCCF director Reed Holtgeerts; (2) John Doe, M.D.; 3) Kathryn Hall, M.D.; and (4) Gregg Powell. As relief, plaintiff seeks "[d]amages in the amount of $10,000. *Id.*

Both parties have moved for summary judgment. Plaintiff contends "it is clear defendants did not use correct judgment and proper medical care" and failed to provide a proper "regiment of

---

[1] Petitioner is currently incarcerated at McNeil Island Corrections Center in Steilacom, Washington.

REPORT AND
RECOMMENDATION – 1

drug dosages," dkt. 27 at 12, because of "neglect." *Id.* at 14.[2] Defendants contend that (1) plaintiff has failed to establish a prima facie case; (2) plaintiff's claims are barred by qualified immunity; (3) plaintiff has failed to establish the personal participation of Holgeerts; and (4) suits against unknown or "John Doe" defendants should be dismissed. Dkt. 30.

After careful consideration of the parties' motions for summary judgment, supporting materials, governing law, and the balance of the record, the Court recommends that plaintiff's Motion for Summary Judgment be DENIED, that defendants' Motion for Summary Judgment be GRANTED and that plaintiff's claims be DISMISSED with prejudice.

## BACKGROUND

The parties agree that on December 22, 2006, plaintiff was arrested, booked into the KCCF and seen by KCCF health staff. Dkt. 16 at 2; Dkt. 32, (Dr. Hall decl. at 2). Thereafter, the parties disagree over what medical care KCCF provided plaintiff.

### **Plaintiff's Contentions**

Plaintiff contends that when he was booked into KCCF, he felt faint; he told an unknown doctor that he had a history of mental illness and that he took "Zoloft, Welbutrain [sic] and a blood pressure medication called Prozine" for "(PTSD), Bipolar Disorder, Depression and Schizophrenia." Dkt. 11 (Motion to Amend at 1- 2). A "John Doe" doctor examined plaintiff and found he had low blood pressure. *Id.* Plaintiff states he told the doctor he was a VA patient and that he had "serious medical needs." *Id.* Plaintiff contends the "actions of the Defendant Dr. John Doe did not document or pass this information to the other staff members or his superiors" and "[t]his constituted deliberate indifference to Plaintiff's serious medical needs." *Id.*

Plaintiff also contends that from December 23, 2006 to June 5, 2007, defendant Powell

---
[2] Plaintiff did not number his Motion for Summary Judgment. Dkt. 27.

REPORT AND
RECOMMENDATION – 2

would walk through his unit to check on the mental health needs of inmates. *Id.* at 3. Plaintiff states he "complained to Mr. Powell every time about not getting my medications and that I was in serious pain" and that he also filed a grievance on February 9, 2007. *Id.*

Plaintiff states he does not know when he first spoke with Dr. Kathryn Hall, M.D. but recalls telling her he was "experiencing painful tremors and that [he] had been without [his] medications for months" and that he had a long history of mental illness. *Id.* Plaintiff contends that his "serious medical needs were not taken care of" in violation of the Eighth Amendment.

And finally plaintiff contends Reed Holgeerts failed to provide adequate staffing needs to mental health inmates and the lack of proper training in communication and the ability to diagnose human being needs for assistance when in pain." *Id.* at 4.

**Defendants' Contentions**

Defendants have submitted the declarations of Dr. Kathryn Hall, Greg Powell, and Dr. Benjamin Sanders. Dkt. 30, 31, 32; Dkt. 31, ex. 1. Dr. Hall states plaintiff was evaluated by a nurse when he was initially booked on December 22, 2006. Dkt. 32 at 2. KCCF sent two requests for information about plaintiff's medical history to the VA in December 2006 but the VA never responded. Dr. Hall states that on March 2, 2007, plaintiff received from another provider at KCCF a "Mental Health Initial Provider Evaluation" and was prescribed Zoloft and Prazosin. *Id.* Dr. Hall first met and evaluated plaintiff on April 10, 2007. *Id.* Dr. Hall diagnosed plaintiff as suffering from "depression nos [not otherwise specified]." *Id.* During the evaluation, plaintiff stated he had been taking Wellbutrin before he was booked into the KCCF and asked Dr. Hall for a prescription for this medication. *Id.* On April 10, 2007, Dr. Hall called the VA, verified plaintiff's medication information and prescribed Bupropion, the generic version of Wellbutrin, in addition to the medications he was already receiving. *Id.*

REPORT AND
RECOMMENDATION – 3

Dr. Hall states "in my opinion, based on my qualifications, expertise, experience, review of the records, evaluation of plaintiff and reasonable medical probability, the medications Mr. Kelly requested and was ultimately provided are not known to cause significant adverse symptoms when discontinued." Dkt. 30, (Hall Decl. at 2); Dkt. 32 at 2. Dr. Sanders states he has not met or evaluated plaintiff and agrees with Dr. Hall that the medications plaintiff requested and was ultimately provided are not known to cause significant adverse symptoms when discontinued. Dkt. 31, ex. 1 at 2.

Mr. Powell states that when he first saw plaintiff on February 20, 2007, plaintiff said he had been taking Zoloft and Wellbutrin but had not had any medication for two months. Mr. Powell states he did not observe obvious impairment in thought process or content and plaintiff did not appear impaired by symptoms at the time. Dkt. 31 at 1-2.

**Plaintiff's KCCF Medical Records**

Plaintiff attached some of his KCCF medical records in support of his motion for summary judgment. Dkt. 27. The records indicate on December 24, 2006, plaintiff told KCCF medical staff he takes "a lot of meds" and that KCCF should call the VA. Plaintiff appeared "healthy" to the KCCF staff. On December 26, 2006, plaintiff submitted a "medical kite" to KCCF stating that "I have not had any of my medication for 5 days now I'm really sick at this time." KCCF noted on the kite, "ZOLOFT 100 mg Wellbutrin 75 mg Last dose? Sent signed ROI to VA Hosp. (2nd)." *Id.*

On December 27 and 28, 2006, KCCF faxed medical release of information forms to the Veteran Administration requesting plaintiff's diagnosis and medication and treatment history. *Id.* In February 2007, plaintiff filed a grievance about not receiving medications. In a progress note evaluation dated March 2, 2007, KCCF medical staff noted that plaintiff stated, "I need

Wellbutrin." The evaluation also noted plaintiff was receiving Zoloft and Prazosin. *Id.*

On April 10, 2007, Dr. Hall called the VA because the VA had not yet responded to the requests for medical information that KCCF had faxed in December. Following the call, she prescribed Wellbutrin for plaintiff. A KCCF Special Needs Treatment Plan was also prepared that day to address plaintiff's "mood instability" and "nightmares and flashbacks." *Id.* The plan recommended the following action: "medication treatment and monitoring." *Id.* On April 11, 2007, defendant Powell saw plaintiff for "a brief mental health check" and noted plaintiff had complaints about "AH" and was scheduled to be seen in "Ad Seg clinic on 4/10." *Id.* On May 23, 2007, Dr. David Kersey ordered 7 days of Zoloft, Prozasin and Wellbutrin be placed in plaintiff's property. *Id.*

## DISCUSSION

**I.  Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

When applying these standards, the Court must draw all reasonable inferences in favor of the nonmoving party. *United States v. Johnson Controls*, *Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of his case. Fed. R. Civ. P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248-49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact, and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323.

Plaintiff's claims are made pursuant to 42 U.S.C. § 1983. In order to sustain a § 1983 claim, plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

## II. Indifference To Medical Needs

Plaintiff alleges defendants Dr. John Doe, Dr. Hall, and Mr. Powell violated his Eighth Amendment rights because "petitioner's serious medical needs were not taken care of." Dkt. 11 (Motion to Amend at 3-4). To establish an Eighth Amendment violation, an inmate must prove that prison officials were "deliberately indifferent" to a serious risk of harm to his well-being. *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

A prison official may be held liable "only if he knows that inmates face a substantial risk

REPORT AND
RECOMMENDATION – 6

of serious harm and disregards that risk by failing to take reasonable measures to abate it."
*Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  Negligent provision of medical care does not constitute a constitutional violation.  *See Estelle*, 429 U.S. at 105-06.

   **1.  Defendant Doctor "John Doe"**

The record shows plaintiff was booked into KCCF on December 22, 2006.  Upon booking, plaintiff was seen by unknown medical staff.  Plaintiff contends the "John Doe doctor" who saw him was deliberately indifferent to his medical needs by "failing to document or pass information about plaintiff's medical needs to the other staff members or his superiors."  Dkt. 11 (Motion to Amend at 1-2).

The parties dispute what plaintiff told the medical staff.  Plaintiff contends he told the "John Doe" doctor he was a VA patient who took Zoloft, Welbutrin and Prozine for (PTSD), Bipolar Disorder, Depression and Schizophrenia.  Defendant contends, and this is supported by a medical progress note dated December 24, 2006, that plaintiff asked the medical staff to call the VA hospital and that he took lots of medication but did not know why.  However, it is undisputed that following the December 22, 2006 examination, KCCF attempted to obtain from the VA, plaintiff's treatment and medication history by faxing requests for that information on December 27 and 28, 2006. Based on the existence of the medical progress note dated December 24, 2006 and KCCF's attempts to obtain plaintiff's medical records from the VA, plaintiff has not shown that the "John Doe" doctor failed to document or pass information to other staff members.  Plaintiff's claim that Doctor John Doe was deliberately indifferent to his medical needs by failing to document and pass information about plaintiff's conditions is unsupported and should be dismissed.

**2. Defendant Greg Powell**

There is no dispute that shortly after being booked into KCCF, plaintiff submitted a KCCF "medical kite" that he was feeling "sick" and that he had not received his medications for 5 days. The section of the kite reserved for KCCF comments contains the following notation: "ZOLOFT 100 mg Wellbutrin 75 mg last dose?" The record does not indicate what medications plaintiff received at KCCF from December 2006 to February 2007. However, the grievance[3] plaintiff filed in February 2007 suggests plaintiff was not receiving medications during this time period. The record indicates that plaintiff began receiving Zoloft and Prazosin on March 2, 2007, and began receiving Wellbutrin on April 10, 2007.

Plaintiff claims defendant Powell was deliberately indifferent to his medical needs from December 23, 2006 to June 5, 2007. During that time, plaintiff claims Powell would walk through plaintiff's unit to check on the mental health needs of inmates. Plaintiff's claim of medical indifference is based on complaints he made "to Mr. Powell every time about not getting my medications and that I was in serious pain." Plaintiff's allegations do not make out a claim of medical indifference. Plaintiff has not presented information establishing it was Powell's fault that plaintiff's medications were not prescribed earlier or that Powell ignored plaintiff's complaints.

**3. Defendant Dr. Kathryn Hall**

Plaintiff states he does not know when he first spoke with Dr. Kathryn Hall, M.D. but recalls telling her he was "experiencing painful tremors and that [he] had been without [his] medications for months," that he had a long history of mental illness, had signed two releases for the VA hospital, and was on public assistance. Dkt. 11 (Motion to Amend at 3-4). Based on these

---
[3] The grievance was not submitted by either party but is mentioned in the medical records plaintiff submitted.

facts, plaintiff contends his "serious medical needs were not taken care of" in violation of the Eighth Amendment. *Id.*

These facts, however, are not sufficient to sustain a §1983 action against Dr. Hall. Dr. Hall's records show she first met and evaluated plaintiff on April 10, 2007. Plaintiff told her that he was taking Wellbutrin before he was booked into the KCCF and asked Dr. Hall to prescribe this medication. Dr. Hall did not ignore plaintiff's medical complaints. Instead, she called the VA, obtained information about plaintiff's medication and prescribed Bupropion, the generic version of Wellbutrin that day.

**4. Negligence Allegations**

Plaintiff contends summary judgment should be granted in his favor because "of neglect and the attitudes of the medical staff." Dkt. 27 at 14. Although plaintiff's treatment was not as "prompt or efficient as a free citizen might hope to receive," it does not rise to the level of deliberate indifference in violation of the Eighth Amendment. *Wood v. Houseright*, 900 F.2d 1332, 1334 (9th Cir. 1990). In *Wood*, prison officials failed to provide the inmate's medical records to the prison the inmate was sent to. As a result the inmate was denied a sling and suffered shoulder pain. Despite complaints about his pain and examinations by prison doctors, the inmate did not receive the surgery needed to relieve his pain until a month had passed. *Id.* Although the Court in *Woods* described the prison's conduct as "inexcusable" it held "mere malpractice and even gross negligence" do not constitute a constitutional violation. *Id.*

As in *Woods*, defendants eventually provided plaintiff his medications. To be sure, there was a two month delay before plaintiff received the first two medications and a little more than a three month delay before he received Bupropion. Nonetheless, even if the Court deemed the delay to be "inexcusable," negligence is not a basis upon which the Court may rely to conclude

plaintiff's constitutional rights were violated.

### III. Lack of Defendant Holtgeerts' Personal Participation

Defendants contend the claims against KCCF Director Holtgeerts should be dismissed because there is no evidence Holtgeerts personally participated in violating plaintiff's constitutional rights. Dkt. 30 at 8-9. Plaintiff contends Holtgeerts failed to "provide adequate staffing needs to mental health inmates and the lack of proper training in communication and the ability to diagnose human beings" and failed to follow through with the "Petitioners submitting a second medical release form and still did not get his medications verified." Dkt. 11. (Motion to Amend at 4).

In "limited circumstances" a person can be subject to liability under § 1983 for the acts of others. "Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007), quoting *Taylor v. List*, 880 F.2d 1040, 1045, *petition for cert filed*, 76 USLW 3410 (January 17, 2008) (No. 07-958).

Because the record does not show Holtgeerts participated in or directed the violations, or knew about the violations alleged and failed to prevent them, plaintiff's claims against him should be dismissed.

### IV. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Dkt. 30 at 6. Qualified immunity shields government officials from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if qualified immunity applies, the

REPORT AND
RECOMMENDATION – 10

court must first determine whether "the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts show that no constitutional violation could be established, no further inquiry is necessary. *Id.* at 201. As noted above, because the Court has concluded that plaintiff has not established the defendants have violated plaintiff's constitutional rights, no further qualified immunity analysis is necessary.

## CONCLUSION

For the reasons set forth above, the Court recommends that plaintiff's Motion for Summary Judgment be DENIED, that defendants' Motion for Summary Judgment be GRANTED and that plaintiff's claims against all named defendants be DISMISSED. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of September, 2008.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND
RECOMMENDATION – 11